IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CR-159-WKW |
| | ) | [WO] |
| DERRICK GADSDEN | ) | |

## **MEMORANDUM OPINION AND ORDER**

### I.  INTRODUCTION

In November 2014, Defendant was convicted of one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349.  As a result of his conviction, Defendant was sentenced to the statutory maximum term of 240 months' imprisonment, followed by 3 years' supervised release, and was ordered to pay $1 million in restitution.  (Doc. # 158.)  His projected release date is December 30, 2030.  *See* Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 18, 2021).

Before the court is Defendant's third *pro se* motion for compassionate release (Doc. # 254), in which he seeks to modify an imposed term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The Government filed a response in opposition (Doc. # 261) to which Defendant filed a reply (Doc. # 267).  For the reasons to follow, the motion is due to be denied.

## II. DISCUSSION

"[C]ourts are generally forbidden from altering a sentence once it becomes final." *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021), *petition for cert. filed*, No. 20-1732 (U.S. June 15, 2021). Section 3582(c)(1)(A)(i), as amended by the First Step Act, offers courts a narrow reprieve to reduce a sentence for "extraordinary and compelling reasons." It provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court . . . upon motion of the defendant . . . may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A)(i) (citing 18 U.S.C. § 3553(a)). In *United States v. Tinker*, the Eleventh Circuit succinctly summarized what § 3582(c)(1)(A) requires:

> [B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are "extraordinary and compelling reasons" for doing so, and, as relevant here, (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement.

No. 20-14474, 2021 WL 4434621, at *2 (11th Cir. Sept. 28, 2021). The defendant bears the "burden to establish that he qualifie[s] for compassionate release." *United States v. Smith*, 856 F. App'x 804, 806 (11th Cir. 2021) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)).

Based upon a thorough review of the record, Defendant fails on all three of § 3582(c)(1)(A)'s conditions for obtaining compassionate release.

**A.     Extraordinary and Compelling Reasons**

Defendant has not established extraordinary and compelling reasons warranting his early release from prison. He originally argued that, if sentenced today, multiple amendments to the Sentencing Guidelines would have resulted in his receiving a lower sentence. (Doc. # 254, at 4–5.) After he filed his motion, however, the Eleventh Circuit decided *United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021), and Defendant now concedes that *Bryant* forecloses his reliance on guideline amendments as constituting extraordinary and compelling reasons for compassionate release. (Doc. # 267, at 4–5.) His concession is correct.

In *Bryant*, the Eleventh Circuit held that U.S.S.G. § 1B1.13 "is an applicable policy statement that governs all motions under Section 3582(c)(1)(A)," including those filed by inmates, and thus "district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13." 996 F.3d at 1262. Pertinent here, § 1B1.13 delineates four categories that constitute extraordinary and compelling reasons for compassionate release: (A) a defendant's medical condition, which includes, among other conditions, a "serious physical or medical condition"; (B) a defendant's age; (C) a defendant's family circumstances; and (D) "other reasons . . . [a]s determined by the Director of the Bureau of Prisons."

3

§ 1B1.13, cmt. n.1(A)–(D). Importantly, as pronounced in *Bryant*, application note 1(D), which is the catch-all provision, "does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." *Bryant*, 996 F.3d at 1248; *see also id.* at 1262–65. That discretion lies only with the Bureau of Prisons. Hence, application notes 1(A), (B), and (C) to § 1B1.13 constrain district courts in determining whether a defendant has established extraordinary and compelling reasons justifying compassionate release.

A favorable amendment to the Sentencing Guidelines decided after the imposition of the defendant's sentence that would reduce a defendant's sentence—even one that is retroactive—is not a reason specified in § 1B1.13 that district courts can consider. This reason does not relate to Defendant's medical conditions, his age, or his family circumstances. Because new guideline amendments are not explicitly identified in § 1B1.13's application notes 1(A) through 1(C), this court lacks authority to examine whether it falls within the catch-all exception.

In his reply brief, Defendant alternatively states that he is obese and is a former, ten-year cigarette smoker. He argues that these circumstances make him susceptible to severe illness if he contracts COVID-19 and present extraordinary and compelling reasons for compassionate release. Under § 1B1.13, a serious medical condition can qualify as an extraordinary and compelling reason for compassionate release, *see* § 1B1.13 cmt. n.1(A)(ii)(I), but only where that condition "substantially

diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and is one "from which [the inmate] is not expected to recover," § 1B1.13 cmt. n.1(A). Defendant has submitted no evidence that his self-care is inhibited in any manner. Nor has he shown that the medical personnel at his designated federal correctional institution are unable to provide him adequate treatment for his medical care.[1] *See* § 3553(a)(2)(D); *see also United States v. Sanchez*, No. 2:17CR337-MHT, 2020 WL 3013515, at *1 (M.D. Ala. June 4, 2020) (denying an inmate's motion for compassionate release in part based on the absence

---

[1] Additionally, since the filing of Defendant's motion for compassionate release, there have been two developments that are noteworthy. First, according to the BOP's website, as of October 15, 2021, the facility where Defendant is incarcerated—Federal Correctional Institution Yazoo City Medium ("FCI Yazoo City Medium")—has no active COVID-19 cases among its inmates or staff. *See* Bureau of Prisons Covid-19 Cases, available at https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 18, 2021). This is a marked improvement. *See id.* Second, the BOP has administered 233,200 doses of the COVID-19 vaccine to its approximate 36,000 staff and to its inmates, which as of October 14, 2021's count was 156,675. *See* BOP Covid-19 Vaccine Implementation, available at https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 18, 2021); BOP Statistics, https://www.bop.gov/ about/statistics/population_statistics.jsp (providing that inmate statistics are updated each Thursday) (last visited Oct. 18, 2021).

While there is no evidence as to whether Defendant has received a COVID-19 vaccine, it appears to be readily available at the Federal Correctional Complex Yazoo City ("FCC Yazoo City"). FCC Yazoo City comprises three facilities: (1) FCI Yazoo City Low; (2) FCI Yazoo City Medium; and (3) USP Yazoo City. *See* BOP, https://www.bop.gov/locations/list.jsp (last visited Oct. 18, 2021). The vaccination statistics are available for FCC Yazoo City as a whole, and are not broken down by the individual institutions within the complex. The BOP's website indicates that, since the rollout of the COVID-19 vaccine, 370 staff members and 2,501 inmates have received both doses of the vaccine at FCC Yazoo City and, thus, have been fully inoculated. *See* BOP COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 18, 2021). As of today's date, the BOP reports that there are 3,640 inmates at FCC Yazoo City. *See* BOP, https://www.bop.gov/locations/institutions/yap/; https://www.bop.gov/locations/institutions/yam/; https://www.bop.gov/locations/institutions/yaz/ (last visited Oct. 18, 2021). It is clear from these statistics that the vaccination rate at FCC Yazoo City exceeds that of the general population in the state of Alabama.

of evidence "that the prison is unable to meet [the inmate's] medical needs" (citing § 3553(a)(2)(D))). On this record, his medical conditions are insufficient to rise to the level of extraordinary and compelling reasons for compassionate release.

**B.     The § 3553(a) Factors**

The § 3553(a) factors, considered in light of Defendant's "current circumstances" and "his circumstances at the time of his original sentencing," do not warrant early release. *United States v. Groover*, 844 F. App'x 185, 188 (11th Cir. 2021); *see also United States v. Rind*, 837 F. App'x 740, 744 (11th Cir. 2020) (observing that, under § 3553(a), the defendant's "medical conditions . . . are part of his history and characteristics"). The nature and circumstances of Defendant's offense and his history and characteristics do not favor release. *See* § 3553(a)(1). Defendant and his brother operated a large-scale conspiracy in which they would open or recruit others to open checking accounts with minimum deposit amounts and then would use bad checks from those accounts to make big-ticket purchases from businesses. (Presentence Investigation Report ("PSR") ¶¶ 6–14.) The businesses victimized by Defendant's scam totaled 120, and actual losses exceeded $1,418,000. (PSR ¶¶ 17, 23.) Defendant, who was thirty-four years old at sentencing, also has a lengthy, significant criminal history, which spanned nearly fifteen years. (*See generally* PSR, Part B; Doc. # 183, at 114–16.) His criminal

convictions placed him in a criminal history category VI. (PSR ¶¶ 46–48; Doc. # 183, at 106.)

Furthermore, under § 3553(a)(2), Defendant's release at this juncture—with substantial time remaining on his twenty-year sentence—would undercut the gravity of his offenses, diminish public respect for the law, negate the deterrent value of punishment, and weaken the value of a just punishment. *See* § 3553(a)(2). Overall, the balancing of the § 3553(a) factors does not justify Defendant's release.

**C.     Danger to the Community**

Finally, Defendant must demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13. All of the factors in § 3142(g) have been considered carefully. After careful deliberation, the court finds that Defendant has failed to meet his burden on this condition for compassionate release.

**D.     Conclusion**

Defendant has not met his burden of demonstrating § 3582(c)(1)(A)'s conditions for obtaining a sentence reduction. He, thus, is not entitled to compassionate release.[2]

---

[2] To the extent that Defendant also argues for a sentence reduction under 18 U.S.C. § 3582(c), that argument is rejected for the reasons set out in the Government's response. (Doc. # 261, at 3.)

## III. ORDER

For the foregoing reasons, it is ORDERED that Defendant's third *pro se* motion for compassionate release (Doc. # 254) is DENIED.

DONE this 18th day of October, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE
